CHARLES A. NUTTING, plaintiff in error, *vs.* SLOAN, GROO-
VER & COMPANY, defendants in error.

Where the plaintiff's evidence showed that the draft sued on was given by
    defendants' agent to him for money advanced with which to purchase cot-
    ton; that said agent notified defendants of the draft and the circumstances
    under which it was given; that defendants subsequently received the cot-
    ton thus purchased, but refused to accept the draft, applying the proceeds
    of the cotton to a claim in their favor against their said agent:
*Held*, that a non-suit should not have been awarded.

Negotiable instruments. Notice. Non-suit.    Before Judge
TOMPKINS.    Chatham Superior    Court.    November Term,
1875.

Reported in the decision.

R. E. LESTER, for plaintiff in error.

HOWELL & DENMARK; McCAY & TRIPPE, for defend-
ants.

WARNER, Chief Justice.

The plaintiff brought his action against the defendants on
the common law side of the court, in the nature of a short bill
in equity, in which he set forth the transaction and the facts,
(under the law of this state and the practice of our courts,)
which would equitably entitle him to recover from the de-
fendants the amount of the following draft, which the defend-
ants refused to accept:

          " MACON, GA., 13th October, 1868.
    "At sight pay to the order of C. A. Nutting $4,500 00,
value received, which place to the account of cotton shipped.
              (Signed)              " J. W. FEARS.
"To SLOAN, GROOVER & COMPANY, Savannah, Ga."

The defendants pleaded the general issue, and that the
plaintiff had changed the nature of the debt by accepting the
note of J. W. Fears in settlement of the draft.    On the trial
of the case, the plaintiff introduced, in substance, the follow-
lowing evidence:

1st. The draft and the notarial protest, showing presentation and refusal of defendants to pay, October 15th, 1868, they saying: " We decline to pay it."

2d. J. W. Fears testified as follows: Was dealing in cotton October 13th, 1868, purchasing in Macon, and shipping to the defendants, who were my factors, in Savannah. The history of the draft sued on is as follows: I bought a lot of forty-three bales of cotton on the day of the date of the draft, and the plaintiff advanced the money to pay for it, by discounting the draft which I drew against the cotton. The cotton was shipped to Sloan, Groover & Company, in my name, and the bill of lading was to have been given to the plaintiff to be attached to the draft, but owing to some delay in getting the bill of lading, I did not get it to the plaintiff in time for that day's mail, and I undertook to send it forward to Sloan, Groover & Company, the defendants, with instructions that the draft had been drawn against the cotton, and that the bill of lading was the property of the holder of the draft until the draft was paid. I sent them the bill of lading the same day with letter so notifying them, and also telegraphed them the same thing. They received the instructions in due time, but as I was afterwards informed by them, they did not pay the draft, but, on the contrary, disposed of the cotton, and kept the money under the pretence that I owed them a balance, to which they applied the proceeds of the cotton, although I did not think I owed them anything. No part of the draft has ever been paid, either by defendants or myself, and they have not paid any of the proceeds of the cotton either to me or to the plaintiff.

3d. The letter of J. W. Fears, referred to in his testimony, enclosing the bill of lading—produced under notice to defendants:

"MACON, GA., October 14th, 1868.

"*Messrs. Sloan, Groover & Company, Savannah:*

"Market off to twenty-two cents low middling; twenty-two and a half cents strictly middling. New York market,

Liverpool one-eighth cent off. Do as you think best with my cotton now. I shipped to-day samples eighteen bales, which with forty-three samples I shipped to-day, but could not get bill of lading in time for mail. C. & H. has sight draft $6,000 00, and bill of lading thirty-five and the eighteen bales, samples of which I send you, this draft is against.

" C. A. Nutting has sight draft $4,500 00, and the samples forty-three bales is for that.

"An account of these two drafts $4,500 00, $1,500 000—bill of lading came as I was writing—send forty-three to pay Nutting's draft; eighteen and thirty-five—fifty-three to pay C. & H.' draft.

" Please honor and ship direct to New York, if best. Will ship fifty bales to-morrow.          J. W. FEARS."

4th. The letter of Fears to Sloan, Groover & Company, further advising about the draft, produced by defendants under notice to produce:

" MACON, GA., October 15th, 1868.
"*Messrs. Sloan, Groover & Co., Savannah, Ga.:*

" Your letters and your dispatches of to-day received. They have annoyed me very much. I drew the $4,500 00, favor of C. A. Nutting, against the forty-three bales cotton, in accordance with your instructions to draw with bill of lading attached. As it was late before getting the bill of lading, I informed Messrs. Goodall and Nutting that I had expressed you the bill and samples for forty-three bales, and notified you it was against that lot that the $4,500 00 was drawn, virtually placing the bill of lading to Nutting's draft, and so advised, I telegraphed you to pay the draft certain, $4,500 00. Ship cotton to New York. I sincerely hope you did pay it, as Nutting trusted me with the bill of lading to mail for him, and so advised him. If you did not pay Nutting's draft, you have seriously damaged me. You say I have overdrawn. You must be mistaken in this.     *     *     *     *
*     *     *     *     *     *     *     *     *

Nutting *vs.* Sloan, Groover & Company.

Do please, if the Nutting paper is not paid to-day, pay it in the morning, and telegraph me by nine o'clock that it is paid. Cotton is dull here, twenty-two and a half cents, middling. Now is the time to buy.        *        *        *        *
*        *        *        *        *        *        *        *
        (Signed)                "J. W. FEARS."

The following two letters, dated 13th and 16th October, 1868, were attached to the cross-interrogatories propounded to Fears, witness for plaintiff:

5th.                "MACON, GA., October 13th, 1868.
"*Messrs. Sloan, Groover & Co., Savannah, Ga.:*

   "Your letter requiring bills of lading, and seeming to complain of my not attaching to bills, came to hand. I try to do business correctly and honestly, etc. I telegraphed you "not to send money if account was unsatisfactory. Would close. Write." I confirm it. My account I regard as safe, etc. Now, if you are not satisfied with account I will square up and change. Same time I say your business is satisfactory, but you must not complain so much. I ship you thirty-five samples to-night. There are fifty-one bales in this lot, and will ship forty bales to-morrow with bill of lading attached.        (Signed)                J. W. FEARS."

6th.                "MACON, GA., October 16th, 1868.
"*Messrs. Sloan, Groover & Co., Savannah, Ga.:*

   "I think you will discover an error in your cotton returns and bacon entries. As I have ordered cotton all sold        *
*        *        *        *        *        *        *        *
You not accepting Nutting's bill will give me no trouble. I arranged it immediately with Nutting, etc.        *        *
*        *        *        *        *        *        *        *
        "Yours, truly,        (Signed)        J. W. FEARS."

7th. C. A. Nutting: Am the plaintiff. The draft belongs to me, and was originally made to me by Fears, on forty-three bales of cotton, for money advanced by me to buy said cotton. Draft drawn on Sloan, Groover & Company, who

were to be consignees of the cotton. The draft was expressly agreed to be a lien on the cotton for its payment, as expressed in the draft. I paid Fears $4,500 00 for the draft, less one-fourth per cent. discount, and took as security the lien which the draft expressed, on the cotton, the money to purchase which I had advanced to Fears. Have never received a cent for it either from defendants or Fears. The bill of lading or railroad receipt for the said cotton was to have been handed to me the same day the draft was drawn, to be attached to it. But Fears said he could not get the cotton shipped and obtain the receipt or bill of lading for it before the closing of the Savannah mail for that day, and he promised that he would send it down by the express or express messenger of that night, to be handed to defendants the next morning, with instructions that the bill of lading belonged to the draft and was security for its payment. That is the reason why the bill of lading was not attached to the draft. Defendants got the bill of lading and the cotton, and refused to pay the draft, and have never paid it or applied any of the proceeds of the cotton to it, although I have demanded it of them time and again. My claim has never been settled or arranged for in any way by either Fears or Sloan, Groover & Company.

8th. W. P. Goodall: The testimony substantially the same as Nutting's.

9th. John T. Ronan, sworn: Was freight agent of Central Railroad at Savannah. Proves the receipt of the forty-three bales cotton and delivery to defendants at Savannah.

10th. Alexander J. Raymar: Proves average weight of upland cotton to be about five hundred pounds per bale in October, 1868.

11th. H. M. Comer: Proves price of cotton at time of receipt by defendants twenty-three and a half cents per pound, with rising tendency.

12th. R. N. Reed: Proves price by actual sales made by him twenty-four cents per pound.

After the plaintiff had closed his testimony, the defendants

demurred to the same and made a motion for a non-suit, which was granted by the court and the plaintiff excepted.

The sole question, therefore, is whether under any view which the jury could have taken of the evidence before them, they would have been authorized to have found a verdict for the plaintiff. The general rule, undoubtedly, is that where one person has goods in the possession of another, he cannot, by drawing a bill on that person, render the drawee liable to the payee for not accepting the draft, for the simple reason that there would be no privity of contract between the payee of the draft and the drawee thereof, but that is not the case made by the evidence in the record before us; there is something more here which might have authorized the jury to have found for the plaintiff, on the ground that the defendants received the cotton consigned to them after notice that the draft had been drawn on them in favor of the plaintiff for the price of the cotton so consigned to them. If the defendants received the cotton consigned to them, after notice from the consignor that he had drawn a draft against it in favor of the plaintiff for the money advanced by him to pay for it, and then refused to accept the draft, and applied the proceeds of the cotton to the payment of their own account for advances made to Fears, the drawer, then the plaintiff had a *prima facie* case which would have entitled him to recover, and the questions of fact involved should have been submitted to the jury. The true principles of law applicable to the facts of this case, are correctly stated by Parsons in his treatise on the law of promissory notes and bills of exchange: "It would seem, says the learned author, that if a person should write to a factor that he had sent him certain goods for sale, and drawn a bill on him on the credit of the goods to a certain amount, the factor, if he received the consignment, would be bound to accept the bill. The question still remains, whether the payee of the bill would have a right of action against the factor as an acceptor for money had and received to his use, on the ground that the acceptance of the consignment was equivalent to a promise to accept. We should hold him so

liable, on the ground that by accepting the consignment he had made a contract with the drawer to accept the bill, and that this contract being for the benefit of a third person, this person might bring an action for the breach of the contract :" 1 Parsons on Notes and Bills, 291. In view of the fact that under our practice, the plaintiff's declaration was so framed as to authorize the equitable as well as the legal rights of the parties to have been considered on the trial of the case, the court erred, in our judgment, in non-suiting the plaintiff on the statement of facts contained in the record.

Let the judgment of the court below be reversed.