## Consolidated Coal Company of St. Louis v. John Schneider et al.

1. CONTRACTS—*Construction by the Parties.*—A party entered into a contract with a corporation to sell it the output of a coal mine, agreeing to furnish a certain number of car loads of coal per week, at a certain price, to be loaded free on board the cars at the mine. The contract did not state which party should furnish the cars, but as the party buying the output furnished the cars for that portion of the coal which was de-

Consolidated Coal Co. v. Schneider.

livered, it thereby placed a construction upon the contract, and could not afterward object.

2.  Pleading—*Defects Waived—When.*—If a party litigant deems the pleading of his adversary defective, he should demur. Defects are waived by pleading a set-off.

3.  Same—*Manner of Amending.*—A party amending a pleading should indicate the precise part of it amended, and the place in the plea where the amendment is to be inserted.

4.  Same.—*Defects, etc.—When Cured by the Verdict.*—When there is any defect, imperfection, or omission in a pleading, whether in substance or form, which would have been fatal on demurrer, if an issue is joined upon it requiring proof of the matters defectively stated or omitted, such defects, imperfections, or omissions will be cured by the verdict.

5.  Practice—*Motion to Dismiss by One Joint Plaintiff.*—The denial of an oral motion by one of several plaintiffs in his own behalf, to dismiss the suit, can not be assigned for error.

6.  Evidence—*Admission by Pleading.*—Where a plea of set-off to a declaration upon a contract shows that the defendant has notice of the contract for the breach of which damages are claimed and by his plea puts the same in issue, the admission of such contract in evidence is not error.

7.  Measure of Damages—*Gains and Profits.*—Under a contract with the owners to operate a coal mine, pay rent for the use of the mine and machinery and royalty for the coal, the owners contracting to take a certain number of car loads of coal each week, delivered on board cars at the mine at a price fixed by the contract, in case of a breach of the contract in failing to furnish cars to take the coal, the owners will be liable for the gains and profits prevented by reason of such failure.

Assumpsit.—Breach of contract. Appeal from the Circuit Court of St. Clair County; the Hon. Alonzo S. Wilderman, Judge, presiding. Heard in this court at the August term, 1895. Affirmed. Opinion filed March 7, 1896.

## Statement of the Case.

This suit was brought by appellees to recover damages for the breach of a contract between them and appellant, and a verdict for appellees was returned for $3,500 damages, for which sum and costs judgment against the appellant was entered, and it took this appeal.

By the terms of said contract appellant leased from September 1, 1893, for eleven months thereafter, to the appellees, a coal mine, with all machinery and appliances thereto belonging. Appellees contracted to operate said mine in a workmanlike manner and in accordance with the directions

of appellant's superintendent, so far as the plan of the work is concerned. And to furnish appellant, unless prevented by strikes, or circumstances beyond their control, during the months of September, October, November and December, 1893, and January, February and March, 1894, with an aggregate of thirty-six car loads of lump coal per week, and during the months of April, May, June and July, 1894, an aggregate of twenty-four car loads of lump coal per week, all at a price of sixty cents per ton for screened lump coal, and with all the nut coal produced at said mine, at twenty-five cents per ton, all f. o. b. cars at said mine. It was further provided that appellees should pay appellant as royalty for said coal, and as rent for the use of said mine and machinery, five cents per ton on all lump coal loaded on railroad cars. It was also provided, that any failure on the part of appellees to comply with any part of the contract, should authorize appellant to forfeit and terminate the same, and to enter and take possession of said mine and all machinery and appliances thereto appertaining. And lastly, appellant agreed to receive from appellees the aforementioned amounts of coal, and to pay therefor, on its regular monthly pay days, the sum of sixty cents per ton for all lump coal, and twenty-five cents per ton for all screened nut coal, f. o. b. cars at said mine.

The breach of this contract, as averred in the third amended declaration pleaded to, is: That appellees entered into possession of said mine under the contract on September 1, 1893; that by the construction then and there put on said contract by all the parties thereto, defendant then and there took upon itself the duty and obligation of furnishing plaintiff from time to time the necessary number of railroad cars on which to load said coal, and thereupon it became and was defendant's duty to furnish said cars. That defendant, though often requested, refused to furnish the railroad cars necessary for the plaintiffs to load the full amount of coal to be taken and paid for by defendant during said time, from September 1, 1893, until April 28, 1894, and refused to receive and pay for the balance of said coal, as it

ought to have done under said contract, during the time last aforesaid. And further avers that at all times between said last named dates plaintiffs were ready, able and willing to furnish and deliver to defendant on board the cars, said coal in accordance with the terms and conditions of said contract, and then and there requested defendant to furnish the necessary railroad cars for the loading of said coal, and then and there offered to deliver said coal on board the cars, in accordance with the terms and conditions of said contract, and requested defendant to furnish said cars, and accept and pay for said coal. Yet defendant did not, nor would at any time during the time last aforesaid, keep and comply with the terms and conditions of said contract by it to be kept and complied with during the time last aforesaid, but has refused and still refuses so to do. And by means of the failure of defendant to keep and comply with said contract as aforesaid, plaintiffs have been deprived of, and lost the wages, gains and profits which would have accrued to them under said contract if the same had been kept and complied with by defendant, and were compelled to pay out large sums of money to maintain said mine during the time it was idle by means of defendant's failure as aforesaid. All to the damage of plaintiffs of four thousand dollars.

It is also averred that from April 28, 1894, to July 21, 1894, plaintiffs were prevented by strikes from furnishing the coal by them during that period to be furnished to defendant under said contract; that if plaintiffs had not been prevented from doing so by said strikes, from and after said July 21 and until the expiration of the time mentioned in said contract, they would have furnished defendant the amount of coal required by the contract.

In the original declaration, filed August 25, 1894, the written contract is set out *in haec verba*, and on September 13, 1894, a general demurrer to said declaration was filed, and on October 3, 1894, was sustained and leave to amend given, and on October 4, 1894, first amended declaration was filed, in which also said contract is set out *in haec verba*, and on October 6, 1894, defendant filed its plea of general issue

thereto, and on October 9, 1894, filed a plea of set-off there-
to, averring that plaintiffs are indebted to it for damages
arising out of the violation of the same contract in plaintiffs'
declaration mentioned; that by the terms of said contract it
was the duty of plaintiffs to furnish defendant, during the
time between the date thereof and July 31, 1894, 1488 car
loads f. o. b. cars at the mine, all at a price .of sixty cents
per ton; all of which defendant was at all times ready and
willing to receive and pay for at said price. Yet plaintiffs
did not furnish to defendant f. o. b. cars at said mine, 1488
car loads of coal, but during the whole time of said contract,
furnished to defendant but 691 car loads of lump coal, and
wholly neglected and refused to furnish defendant the other
797 car loads of lump coal at said mine, or at any other
place, by means whereof defendant lost and was damaged in
the sum of $10,000, which sum so due from plaintiffs to de-
fendant, exceeds the damages sustained by plaintiffs by
reason of the non-performance by defendant of the several
promises in the declaration mentioned. Then follows the
offer of set-off to plaintiffs out of said sum the full amount
of said damages.

On October 12, 1894, plaintiffs filed their second amended
declaration for the use of certain persons, and after the aver-
ment that on September 1, 1893, "defendant then and there
entered into an agreement and contract in writing with the
plaintiffs of that date, in words and figures as follows, to
wit," is this: Memorandum of an agreement made this
first day of September, A. D. 1893, between the Consolidated
Coal Company, of St. Louis, party of the first part, and John
Schneider, George Lanston, Sr., George Lanston, Jr., John
Beaumont, William Henry Beaumont, Levi Beaumont, Jesse
Randle, Sr., Jesse Randle, Jr., Charles Rowland, John Er-.
win, John Beese, Sr., John Beese, Jr., Amos Randle and
Joseph Randle, of Birkner Station, Illinois, parties of the
second part, witnesseth :

The said party of the first part hereby leases and sublets
to the parties of the second part, for the term of eleven (11)
months from the date hereof, its coal mine known as

Reinecke No. 1 mine, located near Birkner station, together with all machinery and appliances thereto belonging.

The said parties of the second part contract and agree to operate the said mine in a workmanlike manner and in accordance with the directions of the superintendent of the party of the first part so far as the plan of the works is concerned, and to keep the mine and all the machinery and appliances thereto belonging in good repair and working order, and to return the same at the forfeiture or expiration of this lease in as good condition as when received. And to furnish the said party of the first part, unless prevented by strikes or circumstances beyond their control, during the months of September, October, November and December, 1893, and January February and March, 1894, with an aggregate of thirty-six (36) car loads of lump coal per week, and during the months of April, May, June and July, 1894, an aggregate of twenty-four (24) car loads of lump coal per week, all at a price of sixty (60) cents per ton of two thousand (2,000) pounds, for screened lump coal which shall be free from slate and sulphur; and with all the nut coal produced at said mine, and which must be well screened, at twenty-five cents per ton, all f. o. b. cars at said mine. The parties of the second part also agree that the above stipulated amounts of coal shall be the entire lump coal product of said mine which shall be shipped on railroad cars.

The parties of the second part further agree to pay to the party of the first part as royalty for the said coal, and as rent for the use of said mine and machinery five (5) cents per ton on all lump coal loaded on railroad cars. Said payments to be made on said first party's regular pay days. Railroad weights are to govern as to all coal loaded on cars.

It is further expressly agreed that any failure on the part of the parties of the second part to comply with any part of this contract, shall authorize said party of the first part to forfeit and terminate the same and to enter and take possession of said mine and all machinery and appliances thereto appertaining, with or without process of law.

And the said party of the first part agrees and contracts

to receive from the said parties of the second part, the aforementioned amounts of coal, and to pay therefor on its regular monthly pay days, the sum of sixty (60) cents per ton for all lump coal, and twenty-five (25) cents per ton for all screened nut coal, f. o. b. cars, at the said mine.

The Consolidated Coal Company of St. Louis, by J. C. Simpson, General Manager, Jesse Randle, Sr., John Erwin, Jr., Joseph Randle, Amos Randle, W. H. Beaumont, John Beaumont, Levi Beaumont, John Schneider, John Beese, John E. Beese, C. Rowland, George Lanston, Sr., George Lanston, Jr., Ed. Randle, Jesse Randle, Jr.

And the amount of damages is, that by reason of the failure of defendant to keep and comply with said contract, the plaintiffs "have been deprived of eighty-five days' labor each," and have been deprived of and lost the wages, gains and profits, etc.

To this second amended declaration a special demurrer was filed October 12, 1894, assigning several causes, one of which is: "No contract is set out in the declaration, a mere reference to another pleading being insufficient." The demurrer was sustained, and on the same day the second amended declaration was amended by omitting the words, "have been deprived of eighty-five days' labor each," but in all other respects was unchanged, and on October 17, 1894, said pleas of defendant were extended to this declaration as amended, and issue was joined on these pleas.

Charles W. Thomas, attorney for appellant, contended that a contract may, in cases of doubtful meaning, be interpreted by the acts of the parties but not by what they say, and those acts must not be seriously disputed, but clearly and substantially proved. In every case in which the acts of the parties have been relied upon as interpreting a contract of doubtful meaning, there has been no question whatever that the acts were really performed. This is notably so in the following cases, cited by this court in Crown C. & T. Co. v. Yoch Min. Co., 57 Ill. App. 651; Alexander

v. Barrett, 46 Ill. 226; Parmelee v. Hambleton, 24 Ill. 605; Leavers v. Cleary, 75 Ill. 349.

Dill & Schaefer, attorneys for appellees, contended that the construction of this contract, on this point, is not an open question in this court. Crown Coal & Tow Co. v. Yoch Coal Mining Co., 57 Ill. App. 666; Browne on Parol Ev., Sec. 55; Brose's Case, 104 Ill. 212; Hall's Case, 133 Ill. 240. What is the true rule and measure of damages in this case? In Sutherland on Damages, Vol. 1, 130, the author defines the rule to be "the gains prevented, which would have accrued to the contracting parties by a fulfillment of the contract." He says: "By this general rule the party thus injured by a total breach is entitled to recover the profits of the particular contract, which he shows with sufficient certainty would have accrued if the other party had performed. He is entitled to recover proportionately for a partial breach of the contract." In support of this proposition the author cites many cases, and among others, Van Arsdale v. Rundel, 82 Ill. 63.

Where profits are to spring directly from labor which is to be performed, and the plaintiff is prevented from fulfilling his contract by the action of the defendant, he may recover for the loss of the profits which might have been made. Atkinson v. Morse, 63 Mich. 276; Christian Co. v. Overholt, 18 Ill. 223.

Mr. Presiding Justice Green delivered the opinion of the Court.

On behalf of appellant, it is urged that the trial court erred in denying an oral motion made by defendant's attorney, on behalf of Rowland, one of the plaintiffs, and with his consent to dismiss the suit. This, if an error, is not an error appellant can set up. Our Supreme Court say in Winslow et al. v. Newlan et al., 45 Ill. 147: Hennessy, one of the plaintiffs, entered a motion to dismiss the suit; the other plaintiff resisted the application and the motion was overruled. It may be asked how appellants can as-

sign this for error. They did not enter the motion and it was only a decision against one of the plaintiffs; if they, by collusion, procured Hennessy to enter the motion, then it was a fraud upon Newlan that the court would not aid in consummating. It is insisted also that the contract declared on is not one that needs any interpretation by the acts of the parties thereto. That the words "free on board" mean that the coal had to be loaded on the cars free from all expenses to the buyer, and this could not be done if the buyer had to furnish cars. Hence the interpretation of the contract given by the evidence outside the contract is an interpretation directly contrary to the express provisions thereof and not allowable.

It was averred in the said third amended declaration upon which the cause was tried, "that by the construction put upon the contract by the parties thereto after it was made and when plaintiffs entered into possession of the mine, defendant assumed the duty of furnishing the necessary cars on which to load said coal," and the written contract did not definitely determine which party should furnish them. The case of Crown Coal Co. v. Yoch Coal Co., 57 Ill. App. 666, involved this same question, and this court held, when the appellee sold the output of lump coal, agreeing to furnish not less than a certain number of cars of coal weekly at a certain price, between certain fixed dates, for which appellant agreed to pay at a certain fixed time, and the contract, like the one in this case, did not definitely determine which party should furnish the cars, but appellant furnished the cars for all the coal that was delivered, it thereby placed a construction upon the contract to which it can not now object. It was further held, the amount of damages accruing because appellant did not furnish cars to be loaded and did not promptly take away cars that were loaded, was a question for the jury.

See, also, Parmalee v. Hamilton, 24 Ill. 605; Hall v. Nat. Bank, 133 Ill. 234; Leavers v. Cleary, 75 Ill. 349.

The evidence justified the finding that all the cars were furnished by appellant, and the acts of the parties and the

express promise of appellant's superintendent to furnish cars afforded evidence supporting the averment that by the construction put upon the contract by the parties thereto, appellant assumed the duty of furnishing the necessary cars on which to load all the coal to be supplied under the contract. Another point suggested is that the court erred in permitting the contract to be read to the jury, because it was not set out in the third amended declaration, except by the words, "Here insert said contract as it appears in the original declaration filed in this cause," and on this ground the judgment ought to have been arrested.

If the appellant deemed this mode of pleading defective, it should have filed a demurrer, but instead of so doing it pleaded set-off as before stated, claiming damages " arising out of a violation of the same supposed contract in the plaintiff's declaration mentioned." The precise place for the insertion of the contract is indicated, and it was set up *in haec verba* in the declaration then filed in said cause. In Bourland v. Sickles, 26 Ill. 498, it was held that a party amending a pleading should indicate the precise part of it amended, and the place of its application; that the plaintiff should, by letters, figures or characters of some description, have indicated the precise place where it was designed to be inserted. See Wallace et al. v. Curtis, 36 Ill. 156, where objection was made to certain evidence which plaintiff was permitted to introduce, but the defendants put in issue that which was omitted in the declaration, and it was held the plaintiff had the right to accept the issue, go to trial on it and introduce the evidence objected to.

The plea of set-off in the case at bar showed that defendant had notice of the contract for the breach of which plaintiffs claimed damages, and said plea put in issue said contract, and the admission of it in evidence was not error. Moline Plow Co. v. Anderson, 24 Ill. App. 366; Gerke v. Fancher, 57 Ill. App. 651.

In Kugen v. Kinnan, 123 Ill. 292, where a motion in arrest of judgment on account of a defect in the declaration was overruled, it was held the verdict cured the defect,

and the rule was stated to be that where there is any defect, imperfection or omission in any pleading, whether in substance or form, which would have been a fatal defect upon demurrer, yet if the issue joined be such as necessarily required on the trial, proof of the facts so imperfectly or defectively stated or omitted, and without which it is not to be presumed the judge would direct the jury to give, or the jury would have given the verdict, such defect, imperfection or omission is cured by the verdict. 1 Chitty's Pl., 7th Am. Ed., 711, 712.

It is manifest that appellees were necessarily required to prove the contract omitted in the pleading before the judge would have directed the jury to give, or the jury would have given the verdict. Hence, under the issue joined, the motion in arrest would not lie upon the ground as claimed by appellant. We think also the proof showed a strike prevailed, and prevented appellees from getting out and delivering coal during the time as averred in said plea of set-off, and furnished a legal excuse under the terms of the contract and absolved them from liability for failure to deliver.

It is said lastly that no damages were legally recoverable, or if any were recoverable, the amount assessed was grossly excessive, and in making the estimate, counsel for appellant bases the profits on the lump coal at twenty-two cents per ton, and says Schneider, the only witness who testified on the question of damages, so testifies, as appears on page 38 of the record.

We have looked at his testimony on that page and find that he testified the profit on nut coal would have been 22 cents per ton, but on lump coal 36⅔ cents per ton.

The number of cars for lump coal which appellant failed and refused to furnish was 513, at 19½ tons each, making 10,003½ tons at 36⅔ cents, $3,667.89, and the loss on 87 cars of nut coal, to be furnished by the appellees at $2.50 per car, $166.02. Making the total damages as shown by the evidence $3,834.51.

But the damages assessed were only $3,500, which was not an excessive assessment, if plaintiffs could legally

recover for the loss of gains and profits that was occasioned by the failure of defendant to furnish the necessary cars Appellant contends, however, that the appellees could only legally recover as damages for failure to deliver cars, the difference between the market price of such coal so loaded and the contract price.

That the rule is the same as in a case between a vendor and vendee of merchantable articles. We do not so understand the rule applicable to the facts in this case. The contract was something more than for a mere purchase and sale.

It required said appellees to operate said mine in a good and workmanlike manner for eleven months, and by their work therein, produce the coal and pay rent for the use of the mine and machinery and royalty for said coal, and for the breach by appellant in failing to furnish cars, appellees are entitled to recover the amount of gains and profits which the evidence shows with sufficient certainty would have accrued to them if appellant had performed. They have the right to recover for gains prevented and losses sustained by the partial breach of the contract by appellant. 1 Sutherland on Damages, pp. 130–132; Atkinson v. Morse, 63 Mich. 276; Am. Digest, 1890, p. 1006; Id. 1892, p. 1375.

The evidence established, as already stated, the loss of profits to appellees by appellant's breach was greater than the damages assessed; that appellees were ready, able and willing to furnish the coal to fill the cars which they requested appellant to procure and furnish and which it failed to furnish; and we see no good reason for reversing the judgment. Judgment is affirmed.