## The Fruit Growers State Bank of Saugatuck, Michigan, Defendant in Error, v. Herman Peters, Trading as Peters Brothers, Plaintiff in Error.

### Gen. No. 17,456.

1. PRINCIPAL AND AGENT—*evidence of authority.* In an action for money advanced to defendant's agent at defendant's request where plaintiff bank discounted drafts drawn by the agent on defendant, evidence as to the course of dealing between defendant, the agent, and the bank is admissible to show the relation of the parties and the capacity in which the agent acted.

2. PRINCIPAL AND AGENT—*where evidence shows authority of agent.* In an action for money advanced to defendant's agent, where the evidence shows that the agent buying fruit in Michigan drew drafts on defendant in Chicago who telegraphed to plaintiff that he would pay all drafts attached to invoices for fruit shipments, there is sufficient proof that the agent had authority to draw the drafts.

3. NEGOTIABLE INSTRUMENTS—*where principal agrees to accept draft before it is drawn.* Where defendant agrees to accept drafts to be drawn by his agent who is buying fruit, he becomes liable for the amount paid on the drafts as fully as if he had previously accepted them on their face.

Error to the Municipal Court of Chicago; the HON. JOHN J. ROONEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed June 24, 1913.

CHARLES A. BUTLER, for plaintiff in error.

WORTH E. CAYLOR, for defendant in error.

MR. PRESIDING JUSTICE F. A. SMITH delivered the opinion of the court.

An action was brought by the defendant in error against the plaintiff in error in the Municipal Court of Chicago to recover from the defendant money loaned and advanced to one A. W. Tryon, an agent of the defendant, at defendant's request and for the benefit of defendant, and a recovery by the plaintiff was had in that court. This writ of error brings before us the judgment and record for review. The plaintiff in the cause is a bank located at Saugatuck, Michigan, and the defendant is Herman Peters, doing business under the name and style of Peters Brothers, in the city of Chicago. The proof showed that A. W. Tryon, for some time prior and up to the transactions resulting in the above action, was purchasing fruit and shipping the same to Peters Brothers as their agent.

Tryon's place of operation was at Fennville, Michigan. Tryon, by telephone, requested the plaintiff in the action to advance money on shipments of fruit which he was buying for Peters Brothers, the defendant. This the bank refused to do unless it had instructions from the defendant. Thereupon Tryon telegraphed defendant at Chicago to wire the Fruit Growers State Bank of Saugatuck, "Honor drafts invoices attached." On the same day the defendant telegraphed plaintiff, "Will pay drafts Tryon attached invoices shipments fruit." Upon the faith of this telegram, the plaintiff discounted drafts drawn by Tryon on Peters Brothers, attached to all of which drafts were invoices of fruit.

About October 7, 1910, Tryon was drawing large amounts, and was told by the cashier of plaintiff that

434    APPELLATE COURTS OF ILLINOIS.

Fruit Growers State Bk. of Saugatuck v. Peters, 181 Ill. App. 432.

he would have to keep a balance with the plaintiff. Tryon replied that he could not do that because he was only drawing drafts as fast as he was buying, and could not keep any balance but would verify the previous matter by getting Peters to send the bank another wire. The plaintiff, on the same day, received the following telegram from Peters Brothers: "Will pay Tryon's draft attached to invoice on grapes." This was evidently sent in response to a telegram sent by Tryon to Peters Brothers, which reads as follows: "Wire bank at Saugatuck honor draft car grapes invoice attached." Pursuant to authority thus given, the bank paid on October 3rd a draft for $220.80; on October 4th a draft for $192.26; on October 8th a draft for $492.62; on October 14th a draft for $200, and another draft on the 14th for $168.20,—all of them being paid upon presentation by Peters Brothers. Two other drafts were drawn by Tryon on Peters Brothers, one dated October 8, 1910, for $250, and one dated October 10, 1910, for $250, but were not paid. $112.64 was paid on a draft for $500, dated October 13, 1910. The total amount paid on the last three drafts was $612.64. On October 18th, the plaintiff bank received a letter from Peters Brothers, dated October 17, 1910, stating that the drafts they were paying were simply advances on fruit they were buying from Tryon, and claimed that the fruit was not of the kind they had contracted for, and that they were getting a different kind of fruit, put up differently; and the same day the bank received a telegram from Peters Brothers as follows: "Tryon's drafts don't cover shipments. We will only pay his drafts subject inspection goods here. Whenever we guarantee we will send telegram covering specified shipment." After receiving this telegram and letter the bank paid out no more money. The total amount paid to Tryon under the authority given by defendant below and unpaid by him was $612.64.

This was substantially the evidence on which the court rendered judgment for the plaintiff. It is urged on behalf of the plaintiff in error, defendant below, that the proof in the record does not show agency on the part of Tryon, and that the defendant can only be held liable for unpaid drafts drawn for shipments actually made. It is argued that the conversation of Tryon with the cashier of plaintiff was improper and incompetent to show agency on the part of Tryon. It is urged, further, that the trial court erred in admitting the evidence of the cashier of the plaintiff bank concerning the conversations with Tryon, and that there is no evidence in the record showing that any merchandise was ever shipped to or received by the plaintiff in error, defendant below, and that the bank cannot recover without showing actual shipments of fruit to defendant, plaintiff in error.

The proof, in our opinion, shows that Tryon had authority to draw the drafts upon the defendant for fruit with invoices attached, and that the bank was authorized by Peters to advance money on the drafts so drawn. The whole course of business between Tryon, plaintiff in error, and the bank was properly admissible to show the relation of the parties, and the capacity in which Tyron acted. The course of business as shown by the evidence, tends to prove that Tyron was the agent of the plaintiff in error; but however that may be plaintiff in error agreed to accept the drafts before they were drawn, and he became liable for the amount paid on the drafts as fully as if he had previously accepted the drafts on their face. *Hall v. First Nat. Bank of Emporia,* 133 Ill. 234; *Huston v. Newgass,* 234 Ill. 285.

The judgment is affirmed.

*Affirmed.*