(No. 20644.—

LILLIAN LIZON, Appellee, *vs.* ANDREW DOLEJS, Appellant.

*Opinion filed June 18, 1931—Rehearing denied October 7, 1931.*

SUMNER C. PALMER, for appellant.

HARRINGTON & McDONNELL, (JOSEPH T. HARRINGTON, of counsel,) for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Marie Dolejs died the 12th day of November, 1928. She left an estate valued at about $150,000 and left as her heirs-at-law two sons and four grandchildren, the children of a deceased daughter. Afterwards there was admitted to probate in the probate court of Cook county a document purporting to be the will of deceased, devising most of her property to her sons and some little bequests to her grandchildren. Lillian Lizon, a minor grandchild, filed a bill, which was later amended, against the other heirs and the administrator with the will annexed, who was Sumner C. Palmer. The amended bill charged that the will was not the will of Marie Dolejs but that it was forged and was never signed by her or acknowledged by her in the presence of the attesting witnesses. The bill prayed that the alleged will and testament be set aside and declared null and void and deceased's property be distributed to her heirs according to law. A formal answer was filed by the minor defendants by their guardian *ad litem*. One of the sons, Charles E. Dolejs, filed an answer admitting the allegations of the amended bill, and a joint and several answer was filed by the other son, Andrew Dolejs, and the administrator with the will annexed, denying that the instrument was forged and asserting its validity. A jury was empaneled and an issue at law was made up, Is the purported will the last will of said Marie Dolejs? The jury returned a verdict that it was not her will. A motion for a new trial was overruled and a decree entered by the circuit court of Cook county in conformity with the verdict of the jury, and one of deceased's sons, Andrew Dolejs, has appealed to this court.

The testimony presented on the trial was conflicting and some of proponents' testimony was contradictory and inconsistent. One of the subscribing witnesses, Ida Schiffer, testified she was present when the will was written by deceased in the Bohemian language during August, 1927;

that it was at 2121 Nineteenth street, and the other subscribing witness, Wadislaw Adaszkiewicz, was also there. The witness signed the will as Ida Schiffer. She testified the instrument was written at the place she was; that she was married in August, 1925, to a man named Sommers and had lived with him since as his wife. She also testified she was a former sweetheart of Andrew Dolejs, and that she had not seen deceased for about three years before August, 1927, and had not been in her house from that time until her death, in 1928; that she never told anyone she witnessed or signed the will; that when deceased signed the instrument she was standing up and there was no space between her name and the end of the writing; that there was more writing on the instrument at the time she signed it. She also testified deceased never said anything about who put her name to the instrument, as no name was signed when the witnesses were there. She stated that she saw deceased sign her name and then the subscribing witnesses signed.

The other subscribing witness was Wadislaw Adaszkiewicz, a man of Polish descent. He testified he saw deceased sign the paper; that he signed it at the end at her request and in her presence; that she said she was writing a will, and he told her she would have to have two witnesses. He testified she told him when he came to her house that she was writing a will in the Bohemian language; that he told her son Andrew, after his mother's death, that she had made a will but did not tell him that he signed it. He said he saw deceased writing on the will but did not see her write her name to it.

A Mr. Tvrzicky, a real estate broker, who was familiar with the Bohemian language, made a translation of the will for the proponents. He testified he had known deceased sixteen years; that she was a midwife and handled cases mostly for Polish working ladies. He stated he had seen her write and would know her signature, and that

the signature to the will was her signature. On cross-examination he testified that the body of the will was not in her handwriting and that the will and the signature thereto were not written by the same party.

Anthony Holub, an attorney, testified for proponents that he had known testatrix since 1916 or 1917 and had represented her for about three years; that he had seen her write her name twenty or thirty times, the last time in June, 1927; that the writing in the will is not the same handwriting as the signature to it. He was of opinion the signature at the bottom of the instrument was that of Mrs. Dolejs.

On the part of contestant, B. C. Bartix, employed by the Kaspar American State Bank; R. F. Hgiecek, vice-president and cashier of the Lawndale National Bank; A. L. Reeck; Julius Krippner, deputy clerk of the criminal court; James W. Mraz, an attorney; Q. J. Chott, an attorney; Stanley Borkowski, a bank clerk; Joseph Krecek, a real estate dealer; Frank Smith, a real estate broker, and Rudolph Salmon and John J. Moser, handwriting experts, were called as witnesses.

Andrew Dolejs, the appellant and principal beneficiary under the will, was called as a witness by contestant. He testified he did not know his mother's signature; that Adaszkiewicz, one of the subscribing witnesses to the will, never told him that he saw the testatrix write a will, but he did tell the witness there was a will and to look for it; that Ida Schiffer also told him that his mother left a will; that he did not remember ever saying that either Adaszkiewicz or Ida Schiffer said they had witnessed the will. He testified that he and his brother Charles, and Johnnie, the little boy, went to West Nineteenth street and found a lot of papers and some money, which they put in one thick package and took it down to Troy street; that the tin can that had all the papers in it came from 2121 West Nineteenth street and they took the papers over to 2600 South

Troy street; that they were looking for a will at the time and that some time in December they found it.

B. C. Bartix testified for the contestant that he was familiar with deceased's signature; that the signature on the instrument purporting to be her will was not her signature, and that the body of the will and the signature were not, in his opinion, in the same handwriting. The cashier of the Lawndale National Bank testified there was a likeness between the signature on the purported will and the signature on the back of the check which was offered in evidence by contestant but refused to give any opinion as to whether they were written by the same person. Salmon testified that he was an attorney at law and an examiner of questioned documents and writings for sixteen years; that he had examined a thousand disputed matters; that he examined the signature on the purported will and compared it with signatures of deceased; that he made the examination for the purpose of comparing them; that in his opinion the person who signed the exhibits he examined, which were the signatures of deceased, was not the same person who wrote the signature to the will, and gave his reasons for his answers. Moser, a business attorney and handwriting expert, testified that he had examined questioned writings since 1897; that he had made examinations and comparisons of questioned documents in a thousand different cases and testified as an expert; that he made a thorough examination of certain exhibits containing deceased's signature, and in his opinion the signature to the will was not written by the same person who signed those exhibits; that in his opinion the will was written by a different person than the one who wrote the signature to it. Reeck testified for contestant that he had known deceased for about thirty years and saw her right up to within a week or so of her death; that she had talked to him about her business affairs and property and said her son Andrew had it and would not return it to her and would not pay

the interest or taxes. Smith, a real estate broker for sixteen years, testified for contestant that he had known Adaszkiewicz, one of the subscribing witnesses to the will, for twenty years; that he went with him to 2121 West Nineteenth street about a week after deceased's death; that he saw the paper then which was offered in evidence as her will; that Andrew Dolejs had the paper and that there were no signatures on the instrument. Krecek testified he had known deceased thirty years and knew her signature; that he talked to her two sons ten or twelve days after their mother's death and they inquired whether he had drawn a will; that he knew the signature of deceased, and that appearing on the will was not her signature; that he knew the reputation of Adaszkiewicz for truth and veracity in the neighborhood where he lived and that it was bad.

It will thus be seen from the brief synopsis we have made of the testimony that it was in great confusion and we think attended with considerable doubt.

The material errors assigned are, that the remarks of the judge made during the trial were prejudicial and that the court erred in the admission of testimony. We are of opinion there was no reversible error in the remarks made by the judge during the trial or in the admission of testimony. *Hall* v. *First Nat. Bank of Emporia,* 133 Ill. 234; *Chicago City Railway Co.* v. *Carroll,* 206 id. 318; *Purdy* v. *Hall,* 134 id. 298; *Weston* v. *Teufel,* 213 id. 291.

The verdict of the jury was approved by the court after overruling a motion for a new trial, and the testimony was so contradictory and inconsistent that we cannot say that the conclusion of the jury was against the weight of the evidence. *Moyer* v. *Swygart,* 125 Ill. 262; *Greene* v. *Greene,* 145 id. 264; *Holland* v. *People's Bank,* 303 id. 381.

We think the jury was fairly instructed and that we would be unauthorized to reverse the decree. It is affirmed.

*Decree affirmed.*