UNION BANK OF MEDINA *vs.* J. A. SHEA.

Argued April 25, 1894. Affirmed May 7, 1894.

No. 8682.

**Findings supported by the evidence.**

Evidence considered, and *held* sufficient to justify a finding that defendant promised plaintiff to accept a succession of drafts to be thereafter drawn on him by a third party.

**Contract made by acting upon a proposal.**

The act of plaintiff in receiving and cashing such drafts in reliance on such promise was an acceptance of defendant's proposition, which made a binding contract; and the seasonable presentation of such drafts to defendant for acceptance was all the notice that was required.

**Acceptance by action within a reasonable time.**

In the case of a promise to accept nonexisting bills or drafts they must be drawn within a reasonable time after the promise, otherwise the promisee will be presumed to have declined to act on the promise.

Appeal by defendant, J. A. Shea, from a judgment of the District Court of Hennepin County, *Henry G. Hicks,* J., entered August 9, 1893, in favor of the plaintiff, Union Bank of Medina, and against him for $3,812.56. Appeal also by defendant from an order in the same action made September 19, 1893, denying his motion for a new trial.

Samuel C. Bowen of Medina, New York, in November, 1891, shipped to defendant, J. A. Shea of Minneapolis, sixty six car loads of apples to be sold on commission. To obtain money with which to buy these apples Bowen applied to the plaintiff and it agreed to advance $1.25 per barrel on his drafts with shipping bills attached, if defendant would first agree to accept the drafts. This defendant did by the correspondence and telegrams as stated in the opinion. He paid fifty three of the drafts but, after receiving all of the apples, refused to accept or pay the last thirteen drafts amounting to $3,366.25. Plaintiff brought this action upon the promise to accept, and asked judgment for that sum with interest.

Defendant by his answer denied that he promised to accept these drafts and stated that Bowen shipped sixty six cars of apples, that defendant sold them to the best advantage and realized $26,670.29, paid freight $8,513.82, cartage and storage $783.27, and on Bowen's drafts $14,706.18, and that the balance $2,667.02 was his commission on the sales. Plaintiff replied and the issues were tried June 22, 1893, before the court without a jury. Findings were made and judgment entered for the plaintiff for the amount it claimed. Defendant was on motion allowed to make and settle a case after judgment and to move for a new trial, but a new trial was refused and he appealed from both the judgment and the order of refusal.

*A. D. Smith,* and *Gallagher & Gallagher,* for appellant.

The plaintiff under the telegrams and other exhibits claims the rights of a holder of negotiable paper; the defendant, however, claims that he has kept fully whatever agreement he made with the bank, and that his charges against Bowen for selling the fruit ought in law and equity to be allowed. As the fruit did not sell for enough to pay all, the defendant ought not to be compelled to pay plaintiff and look to Bowen for repayment. There was no definite or certain agreement ever made between the plaintiff and the defendant. Defendant's telegram and letter to Bowen were, if of any validity whatever, only propositions to guarantee Bowen's drafts, and as there was no notice of acceptance by the plaintiff bank and no definite amount or time specified for which they would

take defendant's guaranty, the defendant is not liable. *Vyse* v. *Wakefield*, 6 M. & W. 442; 2 Daniel, Neg. Inst., §§ 1785, 1786; *Mussey* v. *Rayner*, 22 Pick. 223; *Montgomery* v. *Kellogg*, 43 Miss. 486; *Davis Sew. M. Co.* v. *Richards*, 115 U. S. 524.

Neither can the defendant be held on a promise to accept under *Woodward* v. *Griffiths-Marshall G. C. Co.*, 43 Minn. 260. The case might apply to the first draft made by Bowen and purchased by the bank, and which was paid. *Coolidge* v. *Payson*, 2 Wheat. 66.

The court below seemed to think that the fact that Bowen endorsed the bills of lading to the bank was conclusive evidence of notice to the defendant. But if he had notice the fact remaining uncontroverted that he was selling on commission for Bowen the transfer of the bills of lading could in no event put the bank in any better position than Bowen was in. 2 Daniel, Neg. Inst., § 1750; *Security Bank of Minnesota* v. *Luttgen*, 29 Minn. 363.

*Koon, Whelan & Bennett*, for respondent.

The construction which parties by their conduct place upon their contract, if not inconsistent with its terms will be adopted by the court in interpreting it. *Vermont St. M. E. Church* v. *Brose*, 104 Ill. 206; *Hall* v. *First Nat. Bank*, 133 Ill. 234.

It is idle to urge that the bank would make a contract to advance $1.25 for every barrel of apples Bowen might ship to Shea, knowing that the apples might prove worthless and be charged back to Bowen as an entire loss. In that case the bank would only have the personal responsibility of Bowen to secure itself for the money advanced, whereas the facts and the reason of the case show that it had and entered into the contract to advance money only on the belief that it had in addition to this personal liability of Bowen, the liability of Shea upon this promise to accept the drafts and a special property in the apples by virtue of the indorsement to it of the bills of lading.

We agree that the contract of guaranty, like other contracts rests upon the mutual assent of the parties found in offer and acceptance. We agree that the telegram is an offer of a contract. But we do not agree that notice should be given of the intention of the guarantee to act under it, as one of the conditions of the

promise of the guarantor. The assent of a party to whom a proposal is made may be signified to the party making it, by immediately acting under it to the knowledge of the party proposing. *Davis* v. *Wells,* 104 U. S. 159; *Louisville Mfg. Co.* v. *Welch,* 10 How. 461; *Wildes* v. *Savage,* 1 Story, 22; *Davis Sew. M. Co.* v. *Richards,* 115 U. S. 524; *Winnebago Paper Mills* v. *Travis,* 56 Minn. 480.

Whether proper notice has been given is a question of fact to be determined upon consideration of the relative situation of the parties and all the attending circumstances. *Lowry* v. *Adams,* 22 Vt. 160; *Walker* v. *Forbes,* 25 Ala. 139; *Lawrence* v. *McCalmont,* 2 How. 426; *Louisville Mfg. Co.* v. *Welch,* 10 How. 461; *Reynolds* v. *Douglass,* 12 Pet. 497; *Oakes* v. *Weller,* 16 Vt. 63; *Noyes* v. *Nichols,* 28 Vt. 160; *Lee* v. *Briggs,* 39 Mich. 592; *Woodstock Bank* v. *Downer,* 27 Vt. 482; *Woodward* v. *Griffiths-Marshall G. C. Co.,* 43 Minn. 260.

It is not necessary that a new promise be made for each successive draft. The promise may be and in this case was to accept a series of drafts. *Ulster County Bank* v. *McFarlan,* 5 Hill, 432; *Nelson* v. *First Nat. Bank,* 48 Ill. 36.

The evidence shows that the bank advanced money upon the transfer to it of the bills of lading and acquired title to the property represented by the bills before any other right or claim could have attached thereto. It is clear that Shea took the property subject to the rights of the bank thus acquired. *First Nat. Bank* v. *Ege,* 109 N. Y. 120; *Commercial Bank* v. *Pfeiffer,* 108 N. Y. 242; *Hathaway* v. *Haynes,* 124 Mass. 311; *Heiskell* v. *Farmers' & M. Nat. Bank,* 89 Pa. St. 155.

It appears from the evidence that Shea took the consignments of apples in question, with full notice and knowledge of the rights and claims of the bank in and to them, and thereafter with such knowledge sold the apples, received the avails, and appropriated them to his own uses. These facts would make him liable on the drafts as an implied acceptor. *Hall* v. *First Nat. Bank,* 133 Ill. 234; *Nutting* v. *Sloan,* 57 Ga. 392.

Mitchell, J. Plaintiff's first cause of action (which is the only one we need consider) is based upon the alleged promise of de-

fendant to plaintiff to accept the drafts described in the complaint, drawn by one Bowen on defendant in favor of the plaintiff; and the main question is as to the sufficiency of the evidence to establish this promise. We are not unmindful of the fact that the question as to what was the contract between plaintiff and defendant must be determined by what passed between themselves; but it is nevertheless legitimate to construe their language and acts in the light of the relations of all parties to each other and to the subject-matter, and of the objects sought to be attained, at least so far as these were known at the time to both plaintiff and defendant.

The plaintiff was a bank doing business in Medina, N. Y. Bowen, who resided in the same place, was a produce dealer, engaged in buying, selling, and shipping fruit. Defendant was a dealer and commission merchant in fruits in Minneapolis, in this state. During the fall of 1891, and prior to November 5th, Bowen had shipped fruit to defendant, to be sold on commission. November 5th defendant wired Bowen: "Ship as heavy as possible on apples. Big demand." On receipt of this, and on the same day, Bowen went to plaintiff, and requested it to advance him $1.25 per barrel on his drafts on defendant against consignments. The plaintiff consented to do this if defendant would wire or write it that he would accept the drafts, bills of lading for the consignments to be attached to the drafts as security for their payment. Thereupon Bowen wired defendant: "Will ship six or seven cars to-day. Wire Union Bank you will pay any sight drafts, ten shillings barrel, with bill of lading." On receipt of this defendant immediately wired plaintiff: "Will honor S. E. Bowen's draft against apples, dollar quarter barrel. Have been taking care of everything promptly;" and at the same time wired Bowen, "Will advance dollar quarter on apples."

On the next day (November 6th) defendant wrote Bowen, acknowledging receipt of the telegram of the day previous, quoting it verbatim, and adding, "which we immediately complied with." This letter then went on to state what an elegant trade defendant had, and what a big business he would do if Bowen would give him good fruit; and then concluded by requesting Bowen thereafter to make his drafts at five days' sight instead

of at sight, as it was taking a large amount of money to carry on the business, adding, "But, if your bank objects to the five days, and it is not customary with you, it is all right."

On receipt of defendant's telegram of November 5th, plaintiff commenced accepting and cashing Bowen's sight drafts on defendant to the amount of $1.25 per barrel of apples shipped to defendant, the bills of lading (one for each car load) indorsed and delivered to the plaintiff, accompanying the drafts. Between November 5th and 9th, inclusive, plaintiff had cashed some eleven of these sight drafts. On November 9th Bowen showed plaintiff defendant's letter of November 6th, and, as therein suggested, arranged with plaintiff to take drafts at five days' sight instead of at sight, and with that modification the business proceeded as before until by November 12th plaintiff had discounted and cashed in all thirty three drafts, all accompanied by the bills of lading. Of these drafts defendant accepted and paid twenty, but refused to accept or pay the remaining thirteen, although he received and sold the thirteen cars of apples, the bills of lading for which were indorsed to the plaintiff, and attached to the drafts.

Plaintiff had no notice that any of the drafts had been dishonored until December 6th.

Defendant's principal contention is based upon the language of his telegram of November 5th to plaintiff. His claim is that, as it uses the word "draft" in the singular, he only promised to pay one draft, and that it has been paid. The language of the telegram, standing alone, might justify this contention; but, taking into consideration the subject-matter, the position of the parties, and the objects sought to be attained, it seems clear that what was in mind was, not a single draft against one car load of apples, or even against the six or seven car loads shipped on November 5th, but a succession of drafts on successive consignments.

Defendant was anxious for large future consignments of apples from Bowen, and Bowen wanted money to buy the fruit; and what was wanted to accomplish this was to enable Bowen to negotiate, not merely one draft, but a succession of drafts, to enable him to continue large shipments to defendant. What Bowen requested in his telegram to defendant was to wire plaintiff that he would accept "any sight drafts" to the amount of ten

shillings a barrel.  That defendant himself understood his tele-
gram to the plaintiff as a promise to do so is clearly indicated
in his letter of November 6th to Bowen, in which, after quoting
Bowen's telegram to him, he says that he has complied with it.
His request in that letter that future drafts be made at five days'
sight, as well as his conduct in accepting drafts up to the num-
ber of twenty, also indicates that he understood the arrangement
as applying to a succession of drafts on future consignments;
and under the circumstances the plaintiff was fully warranted in
placing that construction on his promise.

Much of the findings of the court consists of statements of mere
evidential facts, some of which may not be fully justified by the
record; but upon the material ultimate fact of defendant's promise
to accept these drafts the evidence was ample.   *Hall* v. *First National
Bank,* 133 Ill. 234, (24 N. E. 546.)

There is nothing in the point that it was necessary, in order to
hold defendant liable, that the plaintiff should, before taking the
drafts, have notified defendant of its acceptance of his promise,
and of the amount to which it intended to take the drafts.

Of course, defendant's telegram to plaintiff was merely in the
nature of an offer, which only ripened into a binding contract
when accepted by the plaintiff.   Until then defendant could have
withdrawn it.   But plaintiff's acting on the faith of the promise
by receiving and cashing a draft or drafts constituted an accept-
ance of the offer, and created a binding contract as to such draft
or drafts; and the seasonable presentation of such drafts to de-
fendant for acceptance was all the notice that was required.   As
to any future drafts, defendant's promise remained still a mere
offer, which he might withdraw by giving plaintiff notice to
that effect; but until such notice defendant's telegram amounted
to a representation that Bowen had a continuing authority to draw
on him to the amount indicated, and that defendant would ac-
cept such drafts.

To avoid misapprehension in other cases, it should be added that
in the case of a promise to accept nonexisting bills or drafts they
must be drawn within a reasonable time after the promise; other-
wise the promisee will be presumed to have declined to act on
the promise, and the promisor will not be deemed to have in-

tended a liability indefinite in time. No such question, however, arises in this case.

Our view as to the effect of the evidence of an express promise by defendant renders it unnecessary to consider whether his acts in taking the consignments of apples against which the drafts were drawn, with full knowledge of plaintiff's rights under the indorsement to it of the bills of lading, did not amount to an implied promise to accept the drafts.

Many of defendant's assignments of error relate to the action of the trial court in excluding evidence as to the dealings between defendant and Bowen, and the state of the account between them, not communicated to plaintiff. All this evidence was clearly incompetent and irrelevant. The contract between defendant and plaintiff must depend on what took place between themselves, and cannot be affected by dealings between defendant and Bowen of which plaintiff had no knowledge.

Judgment and order affirmed.

BUCK, J., absent, sick, took no part.

(Opinion published 58 N. W. 985.)