## PETER HOLM v. GREAT NORTHERN RAILWAY COMPANY.[1]

### February 1, 1918.

### No. 20,705.

**Appeal and error — proceedings at first trial not reviewable after second trial.**

1. Granting a new trial leaves the case as if no trial had ever been had; and upon an appeal from a judgment rendered as the result of the second trial, none of the proceedings at the first trial are before this court for review.

**Accident at railway crossing — failure to look and listen contributory negligence.**

2. A traveler about to cross a railroad track who fails to use his senses to discover whether a train is approaching is chargeable with contributory negligence as a matter of law.

**Same.**

3. Plaintiff's evidence shows affirmatively that the deceased must have seen the warning of the flagman, if he had looked, and was chargeable with contributory negligence for failing to do so.

Action in the district court for Traverse county by the administrator of the estate of Arvid A. Holm, deceased, to recover $7,500 for the death of his intestate. The answer alleged that the death was caused directly by the negligence of deceased in approaching the railway crossing and in failing to heed the warning of the approaching locomotive. At the second trial before Flaherty, J., defendant's motion for a directed verdict was granted. From the judgment entered pursuant to the order for judgment, plaintiff appealed. Affirmed.

*Murphy & Anderson,* for appellant.

*M. L. Countryman* and *A. L. Janes,* for respondent.

TAYLOR, C.

Arvid A. Holm met almost instant death in a collision with defendant's fast mail train at a railroad crossing in the village of Tintah, and

[1]Reported in 166 N. W. 224.

plaintiff as administrator of his estate brought suit for damages. The cause was tried in May, 1916, and resulted in a verdict for plaintiff. Defendant settled a "case" and made a motion for judgment notwithstanding the verdict or for a new trial. The court granted a new trial and in May, 1917, the cause was tried the second time. At this trial, when plaintiff rested, defendant also rested and moved for a directed verdict. The court granted this motion and directed a verdict for defendant on the ground that plaintiff's evidence showed affirmatively that the deceased was chargeable with contributory negligence. Judgment was entered upon this verdict and plaintiff appealed therefrom. He settled a "case" embodying the evidence and proceedings at the second trial and caused it to be attached to the judgment roll. In the record he has printed this settled case and also the settled case embodying the evidence and proceedings at the first trial. In his assignments of error plaintiff challenges the order setting aside the first verdict and granting a new trial. Granting a new trial was within the discretion of the trial court. The effect of an order granting a new trial "is to set aside entirely the trial, with all its evidence and proceedings, and the case then stands precisely as if no trial had ever been had." McKenzie v. Banks, 94 Minn. 496, 103 N. W. 497. The present appeal is from the judgment rendered as the result of the second trial; and the propriety of granting the second trial is not before this court for review, and, the first trial having been wiped out, none of the evidence or proceedings at the first trial can be considered upon this appeal.

The only other question is whether the court erred in ruling that the evidence at the second trial showed that the deceased was chargeable with contributory negligence as a matter of law.

The depot at Tintah is on the westerly side of the railway tracks, but Atlantic avenue, the principal business street of the village, is on the opposite or easterly side and extends along the right of way. Fourth street crosses the tracks at right angles and the center line of this street is 258 feet north of the door to the depot. This is the only crossing within the built up portion of the village and passes over five railway tracks. For convenience these tracks were numbered consecutively from 1 to 5 beginning with the track nearest the depot and proceeding easterly. Number 1, the most westerly of these tracks, is the main line, or passenger

track.  Defendant's fast mail train for the west passes through the village over this track daily, shortly before one o'clock in the afternoon, at a speed of about 50 miles per hour.  It is the duty of the station agent to act as flagman at the crossing whenever this train is to pass.

The deceased was a vigorous, healthy young man in full possession of all his faculties.  He was engaged in the livery business in the village and familiar with the situation.  Shortly before one o'clock in the afternoon of a bright August day he drove a span of horses attached to an open buggy along Atlantic avenue, turned into Fourth street and proceeded to the crossing of the first or main track.  At this crossing he was struck by the fast mail.  Until he reached the third track, his view of the main track in the direction from which the train was approaching was entirely obstructed by buildings and by strings of cars upon the other tracks.

Plaintiff presented the testimony of two witnesses who saw the accident. One was the principal of the village school who had gone to the depot to inquire about a trunk.  He testified that while talking with the agent the latter remarked that he was expecting the fast mail; that shortly afterward the witness saw the train come in sight and called the attention of the agent to it who thereupon got his flag and walked hurriedly toward the crossing; that the witness accompanied him to the end of the cinder platform when the agent broke into a run for the crossing and the witness turned away from the railroad in a westerly direction toward his hotel; that a few moments later he turned to see if the agent had reached the crossing and saw him in the street waving his flag and at the same time saw the team approaching from the east at a slow trot; that at this time, as near as he could place it, the team was at the fourth track; that the driver was leaning slightly forward and looking downward and did not turn his head and appeared to be paying no attention to his surroundings; that the agent stepped into the middle of the main track excitedly swinging his flag, but the horses continued to trot in the same manner until within 2 or 3 feet of this track before the driver made any move, and that then the agent stepped back out of the way of the train and the driver "held onto his horses all he could, but he was too close to the main track, and the locomotive shot right by, and the horses leaped into the locomotive.  I think he wasn't more than two feet from the main track when he tried to hold back his horses."

The other eye witness was a farmer who drove along Atlantic avenue for the purpose of turning into Fourth street and passing over this same crossing. One of his horses was afraid of trains. As he was turning down Fourth street this horse jumped, and on looking he saw the smoke of the train near the depot and also heard the rumble of the train which had apparently frightened his horse. He testified that he then looked toward the crossing and saw Holm with his team, and also saw the agent waving a flag; that the team "wasn't going fast—trotting—a slow trot;" that he saw the agent take some steps forward; that Holm then pulled up his team and it swerved to the right but was struck by the locomotive as it swerved; that he thought that the agent had also been struck until he saw him after the train had passed, and that it all happened so quickly that he was unable to estimate the distance of the team from the track when he first saw it. The team does not appear to have gotten upon the track but to have collided with the corner or side of the locomotive.

A traveler about to cross a railroad track is bound to be alert and vigilant for his own protection, and his failure to use his senses of sight and hearing to discover whether a train is approaching constitutes contributory negligence as a matter of law. 2 Dunnell, Minn. Dig. § 8188, and cases there cited.

It seems plain to us that, if Holm had looked as he approached the crossing, he must have seen the agent with his waving flag in time to have avoided the collision, and that the evidence shows beyond question that he failed to look or to take any precaution for his own safety. It follows that the trial court was correct in ruling that he was chargeable with contributory negligence as a matter of law.

Judgment affirmed.