## LOUIS DITKOF v. BENJAMIN LIFSHITZ AND OTHERS.[1]

November 22, 1918.

No. 20,938.

**Verdict upon second trial nullifies the verdict upon first trial.**

1. When a new trial is granted, the trial had, and a verdict rendered, no proceeding by appeal, or otherwise, can reinstate the verdict rendered on the first trial.

**Amendment of complaint.**

2. The trial court did not err in allowing the complaint to be amended.

**Landlord and tenant — lease of theatre void because of illegal stipulation.**

3. The lease construed and *held* to contain an illegal provision contaminating the whole instrument, the provision being an attempt to operate a theatre by the lessee under a license issued to and held by the lessors, contrary to the ordinance of the city.

Action in the district court for Hennepin county against the persons doing business under the firm name of The Liberty Theatre Company to recover $1,400. At the first trial the court directed a verdict in favor of defendants. Plaintiff's motion for a new trial was granted and he was permitted to amend the complaint so as to state a cause of action for money had and received. The second trial was before Hale, J., who directed a verdict for $1,072.50. Defendants' motion for a new trial was denied. From the judgment entered pursuant to the verdict, defendants appealed. Affirmed.

*Simon Meyers,* for appellants.

*Brady, Robertson & Bonner,* for respondent.

[1]Reported in 169 N. W. 483.

Holt, J.

The controversy, resulting in the judgment challenged on this appeal, grows out of a lease of the Liberty Theatre and equipment, located at 1013 Sixth avenue north in the city of Minneapolis. The lease was executed by defendants to plaintiff, and runs for three years from September 1, 1916, at the monthly rental of $175, with the option to plaintiff of a two year extension, at an increased rental. When the lease was entered into the lessors held license from the city to operate the theatre. The lease in addition to the usual terms contains these provisions:

"It is further provided that the Lessee shall deposit with the Lessors the sum of One Thousand Dollars ($1000.00) in cash, the receipt whereof is hereby acknowledged, which deposit shall be as security for the faithful performance by the Lessee of the terms of this lease; provided further that the said One Thousand Dollars ($1000.00) shall be applied as and for rent for the last six (6) and a fraction of a month, of the term, and the said One Thousand Dollars ($1000.00) shall bear interest at six per cent (6%) per annum until so applied or repaid; provided further that if the said option hereinbefore granted is accepted, a condition precedent to the taking thereof shall be the redeposit of One Thousand Dollars ($1000.00) by the Lessee with the Lessors as and for security in the same manner as hereinbefore provided.

"It is further provided that whereas the license to operate said theatre is in the name of The Liberty Theatre Comp·ny, the Lessors jointly and severally agree with the Lessee that the said Liberty Theatre Company will hold said license as and for the benefit of the said Louis Ditkof in the operation of said theatre, and by no act or omission on his part will the said Liberty Theatre Company prevent the said Louis Ditkof from obtaining the full benefits of the said license, and if the said Company should fail to do so, or if the said license should be canceled for any cause whatsoever, except by any future misconduct or interference therewith by the said Louis Ditkof, or by any one on his behalf, then and in that event the said Louis Ditkof shall have the right and option to declare said lease void, surrender possession thereof and obtain back his deposit plus interest to date, less any rent which may be then unpaid.

"The intent and purpose of this last provision is to enable said Louis Ditkof to safely operate said theatre under a license in the name of the Liberty Theatre Company, and to place the risk of the loss of said license in the manner and form hereinbefore provided for and to said extent on the Lessors, and not on said Louis Ditkof."

The city ordinance requires a license for theatres. Such license is issued annually so as to expire on the first Monday in May, and the fee is $150 per annum. Any license so granted may be revoked by the mayor or city council, and, upon conviction of the licensee, before the municipal court, for violation of any ordinance relating to the conduct of the licensed business, the court may revoke the license in addition to imposing a penalty. If any person holding such license should quit or dispose of the business before the expiration of the license he may, with the consent of the mayor, indorsed upon the license, sell and transfer said license to any person who shall succeed him in the same business at the same place; which transfer shall be entered in the books of the city comptroller before it shall be of any validity. Plaintiff deposited $1,000 under the provision of the lease and took possession. No effort was made to obtain the mayor's consent to a transfer of the license held by the lessors, nor was that license revoked. But, after operating the theatre for about two months, the license inspector threatened plaintiff with arrest, unless he procured a license. He thereupon abandoned the premises and sued to recover the $1,000 deposited. The original complaint set out the facts above summarized with more particularity. The trial resulted in a directed verdict for defendants. Plaintiff's motion for a new trial was granted. He obtained leave to amend his complaint so as to state a cause of action for money had and received. On the second trial the court held the lease unlawful, and the result was the judgment from which this appeal is taken.

The appellants contend that the first verdict should be reinstated, because the court erred in granting a new trial; this being the first opportunity they have had of attacking that error. The decision in Holm v. Great Northern Ry. Co. 139 Minn. 258, 166 N. W. 224, is to the contrary.

We do not find reversible error in permitting the complaint to be amended. The original as well as the amended pleading attempted to

state facts showing plaintiff's right to recover the thousand dollars defendants received from him. One and the same subject matter is sought by both complaints, at most, plaintiff merely shifted his theory of pleading, and we think the court was well within the exercise of proper judicial discretion when permitting the amendment, especially since the amendment was allowed several months before the trial. Myrick v. Purcell, 99 Minn. 457, 109 N. W. 995.

The close legal proposition in the case is whether the lease is an unlawful agreement, as held by the learned trial court. No authorities need be cited to the proposition that, if this instrument be susceptible of two constructions, the one making it unlawful and the other not, the former should be rejected, for the presumption is that there was no intention to evade or violate any law either in entering the agreement or in carrying out its terms. A majority of the court are of the opinion that the lease by its terms so clearly shows that the defendants agreed to protect plaintiff in conducting the theatre under the license held by them, contrary to the express provision of the city ordinance, that no other construction is open. It is to be assumed that all the parties were familiar with the requirements of the license ordinances of the city, and in view thereof, no possible interpretation can be given the above quoted provisions other than an agreement that plaintiff should, and safely could, carry on the theatre under the license held by defendants and without the consent of the mayor to a formal transfer thereof. The lease containing these provisions for the accomplishment of an unlawful purpose must be held wholly void, for the illegal part enters into and is part of the consideration for the other covenants and agreements of the parties. The conclusion is that the trial court rightly interpreted the lease.

I dissent from this view, and am also of the opinion that, even if the lease be regarded unlawful, the law will not permit a recovery because the contract has been partially performed by defendants. It seems to me that, giving the parties the benefit of a lawful intention, the provisions of the lease may be considered merely as a consent that plaintiff might use the established name theretofore used by defendants and also as an informal transfer of the unexpired term of the license, so that there would be no hindrance to obtaining the formal approval of the mayor. The right to a refund of the deposit was not to be had, if cancelation

or revocation of the license was occasioned by plaintiff's misconduct, and operating without obtaining the mayor's consent to a transfer would surely be misconduct. Another consideration against construing the lease as an agreement to operate without a license is, that the license referred to in the lease had only a few months to run, and, clearly, there is nothing in the lease from which can be spelled an undertaking by the lessors to provide the lessee with an annual license for the term of the lease, or an assurance that he should run without a license.

But assuming that the lease be unlawful, I am still of the opinion that no recovery should be permitted. Defendants gave plaintiff possession on the strength of this lease and the deposit thereunder made, and he availed himself thereof and, for two months, conducted the theatre in the name of the Liberty Theatre Company. As I read the authorities such partial performance by both parties will preclude either from recovering any money paid the other on the illegal contract. For any attempt to do justice between the parties by the court would necessitate a recourse to the unlawful contract and a consideration of its terms. The court will leave them where it finds them. Knowlton v. Congress & Empire Spring Co. 57 N. Y. 518; Hooker v. De Palos, 28 Oh. St. 251; Ullman v. St. Louis Fair Assn. 167 Mo. 273, 66 S. W. 949, 56 L.R.A. 606; Miller v. Larson, 19 Wis. 463. There may be some apparent exceptions to the rule, dictated by public policy or by express statute, as in the case of the recovery of usurious interest paid. Another instance is the recovery by the principal from his agent of money received by the agent from an illegal transaction conducted by him in behalf of the principal with a third party; the court in such a case proceeding on the theory that the agent cannot dispute his principal's title to money received as agent, and the law implying a promise by the agent to account to the principal for all moneys so received, hence there is no occasion for the court to look to the legal standing of the contract or transaction in virtue of which the money came to the agent's possession.

Such are some of the cases cited by respondent. The only case which intimates that money paid upon an illegal contract may be recovered as money had and received, where there has been a partial performance of the contract by the party sued, is Leadbetter v. Hawley, 59 Ore. 422, 117 Pac. 289, 505. But it will be noticed that in that case there had been no performance whatever, and there was no occasion to apply the rule of

law therein announced. It is clear that, had the license inspector not appeared until the day after the license expired, plaintiff would have had no cause of action for money had and received, for the illegal provision would then have been fully executed, and, as already indicated, no language in the lease can be construed as an agreement of the lessors to provide the lessee with licenses during the whole term. And why should the plaintiff have any better standing if he had been forbidden to operate the day before the license expired, or at any time after he had had some of the benefits from the lease, that is, after there had been a partial performance by all the parties?

We are agreed that respondent's position that he is entitled to an affirmance even if the lease be held a valid contract is not tenable. He claims that the license inspector's threat was to all intents and purposes a revocation of the license and hence the option to terminate the lease became at once available and was exercised by plaintiff; also that there was a surrender of the terms and acceptance thereof by defendants. The difficulty with this theory is that it was discarded by the court below, and defendants were not permitted to establish a defense, based on the assumption that the lease was valid. Proof that defendants offered to cause the license to be formally transferred in conformity with the city ordinance, that there was no acceptance by them of a surrender of the premises, and that there was no rescission of the lease by consent, was all ruled out. The judgment can be sustained on no other basis than the one under which the learned trial court acted.

Judgment affirmed.