## INVESTORS SYNDICATE v. BASKERVILLE BROTHERS HOLDING COMPANY.[1]

July 30, 1937.

Nos. 31,256, 31,257.

[1]Reported in 274 N. W. 627.

*Chester W. Johnson, Dan J. O'Connell,* and *Thompson, Hessian & Fletcher,* for appellant.

*Farr, Phillips & Peterson, Stinchfield, Mackall, Crounse, McNally & Moore,* and *M. D. Nicholson,* for respondent.

PETERSON, JUSTICE.

Two appeals by defendant from orders denying motions for new trial in two separate actions, tried together, for the foreclosure of mortgages upon real estate situated in the city of Minneapolis. One action is to foreclose a mortgage upon property known as the Ambassador Apartments, plaintiff claiming there is due thereon the sum of $44,615.53 and interest at six per cent since July 8, 1935. The other action is for the foreclosure of a mortgage upon property known as the Powderhorn Apartments, under which plaintiff claims there is due the sum of $154,605.52 and interest at six per cent from May 25, 1935. The Ambassador mortgage was in the amount of $61,500, payable at the rate of $600 per month. Payments had been made by defendant which reduced the amount due to that demanded in the foreclosure. The Powderhorn mortgage was in the sum of $200,000, payable at the rate of $1,750 per month, upon which defendant had made payments reducing the amount due to that demanded in the mortgage foreclosure. Defendant defaulted several times in making payments, and the amounts of the monthly payments were changed and adjusted by the parties. The

Ambassador mortgage contains a provision that the payments should first be applied to interest and then to principal. Although the Powderhorn mortgage does not contain such a provision relative to the application of payments, the same rule was used in the application of payments made thereunder as in the case of the Ambassador mortgage. The notes and mortgages each contain a provision that all the deferred payments shall bear interest "at the rate of six per cent per annum  *  *  *  until said principal sum and interest and all other sums advanced by the Investors Syndicate in accordance with the terms of the mortgage given herewith are paid in full." They also contain an acceleration clause in the following language: "If any payment required by this note shall not be paid when due, or if any default shall occur in the conditions of the mortgage deed securing said loan, then the entire amount of said indebtedness remaining unpaid shall thereupon immediately become due and payable at the option of the holder of this note and all sums due shall thereafter bear interest at the highest rate permitted under the laws of this state by contract." Defendant claims that a higher rate of interest was to be charged after maturity and default declared than before because of the provision to the effect that all sums due shall bear interest thereafter "at the highest rate permitted under the laws of this state by contract."

Defendant contends that it is not in default and that it has discontinued making payments on the notes and mortgages because of the refusal of plaintiff to apply on the principal the entire amount paid by defendant. It claims that plaintiff is not entitled to charge and has forfeited all interest and that the refusal to apply the amounts paid in the manner claimed justifies it in having refused to make any further payments.

It is the claim of defendant that the highest rate of interest permitted under the laws of this state by contract is eight per cent; that the notes and mortgages provide for six per cent interest upon all deferred payments; and that the effect of the provision in the acceleration clause is to provide for eight per cent interest after maturity or default. This conclusion is reached by the premise that

the parties have agreed upon the highest rate of interest permitted under the laws of this state by contract and that such rate is eight per cent. The claim is one of usury appearing on the face of the contract. The highest rate of interest by contract permitted in Minnesota is not eight per cent. In the case of salary and chattel mortgage loans, 12 per cent by contract is permitted. 2 Mason Minn. St. 1927, § 7042. Generally, however, rates of interest are governed by 2 Mason Minn. St. 1927, § 7036. That statute provides that the rate of interest shall be six per cent per annum unless a different rate is contracted for in writing, and that no person shall take or receive more than eight per cent interest per annum, and that "contracts shall bear the same rate of interest after they become due as before, and any provision in any contract, note, or instrument providing for an increase of the rate of interest after maturity, or any increase therein after making and delivery, shall work a forfeiture of the entire interest; * * *." Except in certain special cases, the highest rate of interest permitted by contract is eight per cent, subject to the statutory qualification that in no event shall a higher rate of interest be charged after than before maturity. The highest rate of interest after maturity permitted by contract in cases in which the parties have agreed to pay interest before maturity is the rate of interest before maturity. In this case the parties agreed by contract in writing to six per cent interest before maturity. A higher rate cannot be charged after maturity. If defendant's argument were pursued literally, plaintiff, asserting its right thereto, would claim 12 per cent and not eight per cent interest. But defendant does not make this contention because this contract is not for a salary or chattel mortgage loan, and hence that statute does not apply. In short, defendant is compelled to qualify its argument by the admission that the parties did not have *any* contract in mind, but only these particular notes and mortgages. If so, they also must have had in mind the fact that these notes and mortgages fixed the rate of interest before maturity at six per cent. The provision of the statute that no person shall take or receive more than eight per cent interest per annum does not apply, because the provision itself is limited by other provisions of the

statute that the rate after maturity shall not be greater than the rate before. It cannot operate to increase the maximum rate which may be charged after maturity where there is a definite rate before. Whether it be contended that the parties agreed that the rate should be 12 per cent or eight per cent, it is obvious that the provision of law providing for such rates can have no application to the instant case, and therefore defendant's argument falls. Our conclusion is that the highest rate of interest after maturity permitted under the laws of this state for contracts such as those involved in the instant case is the rate of interest charged before maturity. Therefore the notes and mortgages do not provide for an increase of interest after maturity or default.

Defendant relies upon Leathers v. Auto Sales Co. 46 Ga. App. 85, 166 S. E. 838. The case is not in point because the note there involved provided that it should bear interest only after maturity at the highest rate permitted under the laws of Georgia by contract. The highest rate of interest by contract in that state was eight per cent by statute. If the notes and mortgages in this case had not charged any interest before maturity but had provided that interest should be paid only after maturity, the rate of interest due under the contract would then be eight per cent, but the highest legal rate of interest is limited by the rate fixed before maturity, which in the instant case happens to be six per cent.

■ This conclusion is fortified by the presumption that the parties intended their contract to be legal and binding. The parties did not have *any* contract in mind. They had the particular notes and mortgages involved in this action in mind. They contracted with respect to the law which applies to these particular contracts. They contracted for the highest rate "permitted" under the laws of this state. Clearly this implies legality. It means a rate of interest authorized by law. There is no express declaration or controlling provision indicating that the highest rate of interest permitted under the laws of this state by contract was intended by the parties to refer to the clause of the statute which provides that parties may by contract agree to pay eight per cent interest. In the absence of such a provision or circumstances clearly indicating

the contrary, it will be presumed that the parties had in contemplation a provision of law according to which their contract would be upheld rather than one by which it would be defeated. That law would be the provision that the highest rate allowable after maturity is the same as the rate before maturity. The presumption of legality applies to cases of claimed usury. Palmer v. First Minneapolis Trust Co. 179 Minn. 381, 230 N. W. 257, 258. Therefore, if an instrument is susceptible of two constructions, one making it unlawful and the other not, the former should be rejected. Ditkof v. Lifshitz, 141 Minn. 88, 169 N. W. 483; Restatement, Contracts, § 236(a). Green v. Northwestern Trust Co. 128 Minn. 30, 150 N. W. 229, L. R. A. 1916D, 739, involved certain notes providing for a higher rate of interest after than before maturity, which were signed, delivered, and payable in Minnesota and secured by a deed of trust upon real estate situated in Montana. The provision relative to interest was void under the laws of Minnesota and valid under the laws of Montana. It was held that it would be presumed that the parties intended that the notes should be governed by the laws of Montana and not of Minnesota, in order to give validity to the notes. In Mueller v. Ober, 172 Minn. 349, 215 N. W. 781, 782, the validity of a note was involved which provided for an increase of interest after maturity. At the time the notes were given the defendants resided in Iowa and the plaintiff in Wisconsin. The notes were secured by a mortgage on Minnesota real estate and were payable at a bank in Minnesota. It was pointed out in the opinion that the law of Iowa or Wisconsin or Minnesota might apply. Under the laws of Iowa the provision for increase of interest was valid and under the laws of Minnesota invalid. It was held that ordinarily the laws of Minnesota, as the place of performance, would govern, but that the general rule that a contract should be governed by the place of performance must yield to the presumption that the parties intended their contract to be governed by a law which would give it validity. We stated [172 Minn. 353]:

"There were two laws (perhaps three) with reference to any one of which they could have contracted, and the contract accords with

one, viz., the Iowa law. It must be presumed that the parties so intended, because they had their election, acting in good faith, to make the contract according to their selection. The presumption is that the parties intended to contract with reference to the law of the state in which the contract would be valid."

It was held that the law of Iowa applied.

In Gilbert v. Fosston Mfg. Co. 174 Minn. 68, 216 N. W. 778, 218 N. W. 451, it was held that certain notes, signed in Minnesota, under whose laws they were usurious and void, and delivered and payable in Illinois, under whose laws they were valid and not usurious, were governed by the laws of Illinois. The trial court made a finding that the parties had no thought or actual intention as to whether the laws of Minnesota or Illinois should govern the transaction. This court held that it would be presumed that the parties intended that the law of the state which would impart legality to the notes should apply, and inasmuch as the notes were valid in Illinois it would be presumed that the parties intended that the laws of Illinois should apply.

The authorities lay down the rule that if two constructions are possible, by one of which the contract will not be usurious, while by the other it will be usurious and unlawful, the former will always be adopted. If a contract may reasonably be construed not to be usurious, courts will adopt that construction. 66 C. J. p. 172, § 61; Lusk v. Smith, 71 Kan. 550, 556, 81 P. 173; Meaker v. Fiero, 145 N. Y. 165, 39 N. E. 714; Cobb v. Hartenstein, 47 Utah, 174, 183, 152 P. 424; Simpson v. C. P. Cox Corp. 167 Wash. 34, 8 P. (2d) 424; Graeme v. Adams, 23 Gratt. (Va.) 225, 14 Am. R. 130; Reger v. O'Neal, 33 W. Va. 159, 10 S. E. 375, 6 L. R. A. 427; Rose v. Wheeler, 140 Cal. App. 217, 35 P. (2d) 220. If it will be presumed that as between the laws of different states the parties contracted with reference to the law of the state which would impart legality to their contract, then upon the same principle it should be presumed that as between different provisions of local law, some of which will render the contract legal and others illegal, the parties contracted with reference to the provisions of law which make their contract legal.

■ The practical construction by the parties of the language in question would compel us to adopt the construction that the contract was for six per cent interest before and after maturity. Defendant was almost constantly in default under both mortgages during the entire period beginning May, 1929. It was during this period that various changes in the amounts of the monthly payments and other adjustments were made. The payments were recorded in a passbook, so-called, held by defendant and also in the books of plaintiff. The payments were distributed to principal and interest. The interest was computed at the rate of six per cent. Such payments were made during the period from May, 1929, to May, 1935. Some 90 payments were made on the Powderhorn mortgage and some 60 payments on the Ambassador mortgage, in which the interest was computed at six per cent. During this period, when defendant was in default, plaintiff charged and defendant paid only six per cent interest. If defendant's contention is correct, plaintiff would have demanded eight per cent interest during this entire period. It appears conclusively from the record that it never occurred to any of the parties that plaintiff might demand eight per cent interest until September 4, 1935. The last payment prior to that date on the Powderhorn mortgage was made on May 25, 1935, and on the Ambassador mortgage on July 8, 1935. Meanwhile plaintiff was urging defendant to perform. On September 4, 1935, defendant, not plaintiff, raised the point that the notes and mortgages called for eight per cent interest after default. In a letter to plaintiff, defendant stated:

"We received a legal opinion to the effect that the interest as provided in said notes is usurious for the reason that the rate is accelerated after maturity, and, being usurious, the interest is forfeited. We have been advised that our company is legally responsible to pay only the principal of said notes."

The idea that the notes and mortgages called for eight per cent after maturity was first suggested by defendant and then after it was in default and seeking to stave off foreclosure by pretended claims of illegality for usury. It is clear that the parties con-

strued the contracts as calling for six per cent after default. The rule is that if the meaning of a contract is doubtful the practical construction which the parties placed upon it will be followed by the courts. 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 1820; James River Nat. Bank v. Thuet, 135 Minn. 30, 159 N. W. 1093; Wilmot v. Minneapolis Auto. Trade Assn. 169 Minn. 140, 210 N. W. 861. This is the rule generally. See Restatement, Contracts, § 235(e). In Klemik v. Hendricksen Jewelry Co. 128 Minn. 490, 151 N. W. 203, applying the rule, we held that the parties to a contract containing a doubtful provision may render the same clear and certain by acts done with reference to the provision. If there were any doubt in the instant case whether the parties intended that the rate of interest after default should be six per cent or eight per cent, their conduct since has made it clear beyond argument that the rate of interest intended was six per cent and not eight per cent.

It is urged that the clause is rendered meaningless unless defendant's contention is adopted. This does not follow for the reasons already stated. The fact that plaintiff does a nationwide business and that in some states a higher rate of interest may be charged after maturity than was charged before (see L. R. A. 1916E, 726; 12 A. L. R. 367; 82 A. L. R. 1213) suggests that the clause in question was drafted to enable plaintiff to charge a higher rate of interest after than before maturity in those states whose laws permit it to be done. See Gilbert v. Fosston Mfg. Co. and Mueller v. Ober, *supra;* Seeman v. Philadelphia Warehouse Co. 274 U. S. 403, 47 S. Ct. 626, 71 L. ed. 1123.

The other points raised have been considered but do not merit discussion.

The orders are affirmed.